```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
                                     :
JOHN C. GRIMBERG CO., INC.
                                     :
     v.                              :   Civil Action No. DKC 22-2586
                                     :
NUDURA CORPORATION, et al.
                                     :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this construction law case is the motion of Plaintiff John C. Grimberg Co., Inc. ("Grimberg") for reconsideration of the court's March 20, 2025, memorandum opinion and order. (ECF No. 128). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be denied.

**I. Background**

The relevant factual background in this case is set out in a prior opinion. (ECF No. 116). Plaintiff seeks reconsideration of the court's March 20, 2025, order entering summary judgment in favor of Nudura Corporation, Nudura Systems, Inc., and Tremco Construction Products Group, Inc. on Counts I, II, III, IV, V, VI, VII, and XI of the amended complaint. (ECF No. 117).

**II. Standard of Review**

Federal Rule of Civil Procedure 54(b) governs reconsideration of orders that do not constitute final judgments in a case. Rule 54(b) allows "flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

> [A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) "a subsequent trial produc[ing] substantially different evidence"; (2) a change in applicable law; or (3) clear error causing "manifest injustice."

*Id.* (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003)); *see also Jabari-Kitwala v. Montgomery Cnty. Pub. Schs.*, No. 22-cv-0060-GLS, 2024 WL 4007948, at *4-5 (D.Md. Aug. 30, 2024) (applying the standard outlined above). "Importantly, a motion for reconsideration under Rule 54(b) may not be used merely to reiterate arguments previously rejected by the court." *Innes v. Bd. of Regents of the Univ. Sys. of Maryland*, 121 F.Supp.3d 504, 507 (D.Md. 2015). The bar for reconsideration is high; earlier this year, the United States Court of Appeals for the Fourth Circuit reiterated their standard "that Rule 54(b) requires that a challenged decision be so 'dead wrong' that it

2

'strike[s] us as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 414 (4th Cir. 2025) (quoting *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 258 (4th Cir. 2018)).  Legal precedent showing that an alternative resolution was possible is not sufficient to meet this high bar. *Id.*

**III. Analysis**

Plaintiff seeks reconsideration of the court's March 20, 2025, opinion and order granting Nudura's motion for summary judgment and denying Plaintiff's cross-motion for partial summary judgment.  Plaintiff argues that reconsideration is appropriate with respect to the contractual claims (Counts I, III, and IV) because: (1) the court "injected language into the Purchase Order to improperly construe its meaning," (2) the court "ignored the context surrounding the parties' negotiation and execution of the Purchase Order," (3) the court "improperly resolved factual discrepancies in favor of Nudura . . . in the context of summary judgment," and (4) the court "misapplied the pleading standard in concluding that Nudura's January 2018 certifications did not comprise part of the Purchase Order."  (ECF No. 128-1, at 13-18). Further, Plaintiff seeks reconsideration with respect to its tort-

3

related claims (Counts V, VI, VII, and XI), arguing that the court's prior decision as to these counts constitutes clear error. (*Id.* at 18-26). Finally, Plaintiff argues that the court should vacate its grant of judgment on the indemnification claim (Count II), because genuine issues of material fact remain. (*Id.* at 26-28).

Plaintiff does not identify any change in controlling law or evidence that was not previously available. Each of Plaintiff's arguments as to why the court erred have already been made or could have been made in its motion for summary judgment or in response to Nudura's motion for summary judgment. Instead, Plaintiff argues that the earlier decision "was based on clear error [and] would work manifest injustice." (ECF No. 128, at 2 (quoting *Cooper v. Doyle*, No. 22-cv-0052-DKC, 2024 WL 4505008, at *1 (D.Md. Oct. 16, 2024))).

Plaintiff has not met the high bar required to prevail on a motion for reconsideration. Plaintiff fails to identify any clear error of law warranting reconsideration.

    **A.   Contractual Arguments (Counts I, III, and IV)**

Plaintiff's arguments regarding the court's findings on the contractual language are all arguments that could have been made in its summary judgment briefing. Reconsideration is not

4

appropriate where a "new set of lawyers simply emphasized additional evidentiary material that had been readily available to their predecessors in the earlier litigation proceedings." *Chavez-Deremer*, 147 F.4th at 414-415. None of Plaintiff's arguments meet the high bar of a "clear error" causing "manifest injustice."

**1. Interpretation of the Purchase Order**

Plaintiff argues that this court "erroneously interpreted the Purchase Order to hold that 'technical support when required' obligated Nudura to only provide technical support when requested by Grimberg." (ECF No. 128-1, at 14). Plaintiff contends that "when required" means "when necessary" and that only Nudura as "a market-leading specialist with deep expertise in the production and installation of ICF wall systems" would know "when technical support is necessary or required during the installation of its own product." (*Id.*).

Plaintiff maintains that the Purchase Order's language is unambiguous, (*See id.*, at 13), but asks the court to impose a contractual duty on Nudura that is not contemplated by the clear language of the Purchase Order. The court declines to do so. *See Calomiris v. Woods*, 353 Md. 425, 445 (1999) (explaining that when the contract is unambiguous, "the court has no choice but 'to

5

presume that the parties meant what they expressed,' and it may not look to 'what the parties thought that the agreement meant or intended it to mean'" (quoting *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261 (1985))).

Further, Plaintiff's argument that Nudura should have known when technical support was required is different than the argument made in its summary judgment motion. There, Plaintiff argued that "when required" "implie[d] an obligation to actively participate in the project," (ECF No. 75, at 28), as defined in the "January 28, 2018 [c]ertifications . . . as well as in the ICF Wall Specifications," (ECF No. 91, at 12). The certifications and specifications relate to certifying and training the installer and making periodic visits to the construction site; the expectation that Nudura know when its expertise may be needed is not included. (*Id.*, at 12-13).

Plaintiff makes arguments that it could have made in its partial motion for summary judgment. A motion for reconsideration is "not the proper place to relitigate a case after the court has ruled against a party, as mere disagreement with a court's rulings will not support granting such a request." *Sanders v. Prince George's Pub. Sch. Sys.*, No. 8-cv-501-RWT, 2011 WL 4443441, at *1 (D.Md. Sep. 21, 2011) (citations omitted). Additionally, the

6

court's decision to rely on the unambiguous language of the contract was not clear error and does not justify reconsideration.

### 2. Context Surrounding the Parties' Negotiations

Plaintiff argues that the court "ignored the context surrounding the parties' negotiation and execution of the Purchase Order." (ECF No. 128-1, at 14). Plaintiff cites to *Adventist Healthcare, Inc. v. Behram*, 488 Md. 410 (2024), to support its proposition. In *Adventist*, the Supreme Court of Maryland reiterated the standard for contract interpretation:

> We do not, however, interpret contractual language in a vacuum. Instead, we interpret that language "in context, which includes not only the text of the entire contract but also the contract's character, purpose, and the facts and circumstances of the parties at the time of execution." *Credible Behav. Health*,[*Inc. v. Johnson,*] 466 Md. [380,] 394, [(2019)], (internal quotation marks omitted) (quoting *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 88, 5 A.3d 683 (2010)).

*Id.* at 433. Critically, the court went on to explain that:

> Although providing relevant context may necessarily require consultation of evidence beyond the "four corners" of the contract itself, it does not extend to extrinsic or parol evidence of the parties' subjective intent, such as evidence of the parties' negotiations. *Impac Mortg. Holdings, Inc. [v. Timm]*, 474 Md. [495,] 534 n.32[ (2021)]. Such evidence may be considered only after a court first determines that the relevant contract language is ambiguous, which occurs when,

> viewing the plain language in its full context, "a reasonably prudent person could ascribe more than one reasonable meaning to it." *Credible Behav. Health*, 466 Md. at 394, 220 A.3d 303.

*Id.* (footnote omitted). Plaintiff has not contended, now or during summary judgment briefing, that the language of the Purchase Order is ambiguous. Instead, Plaintiff argues that the court failed to consider the following specific pieces of evidence:

> Nudura's parent company has been manufacturing ICF wall systems across North America since 1978 and Nudura has continued that process since 2001. By contrast, Grimberg had no prior experience or knowledge of the ICF wall systems or their construction.
>
> Nudura's patented ICF wall system was used as the basis of the design for the Project.
>
> Between December 1, 2016, and January 28, 2018, Nudura committed to Grimberg to support construction of the ICF walls.
>
> Throughout February and March 2018, Nudura, through Mr. Horgan, provided technical support to Grimberg.
>
> On March 2, 2018, Nudura reiterated its January 2018 certifications and the commitments therein by including them in Grimberg's ICF wall submittal to the Navy.

(ECF No. 128-1, at 17 (citations omitted)). Plaintiff argues that "[t]his context illustrates that the character and purpose of the Purchase Order was for Nudura to supply its patented product to

8

the Project *and* support the installation of its product throughout the construction phase." (*Id.*). Plaintiff concludes that "[o]nly Nudura could determine when the technical support required by the Purchase Order was necessary." (*Id.*).

Plaintiff is correct that, considering the text of the Purchase Order along with the context surrounding the agreement, a reasonable person in the position of the parties would have understood that "the character and purpose of the Purchase Order was for Nudura to supply its patented product to the Project *and* support the installation of its product throughout the construction phase." (*Id.*). Neither party disputes the purpose of the Purchase Order. Plaintiff, however, again attempts to impose an affirmative duty on Nudura related to *how* it would carry out that purpose that is not clearly contemplated by the text of the Purchase Order.

Plaintiff again offers a new argument that could have been made in its motion for summary judgment and fails to identify a clear error in the court's earlier opinion. This is not a proper basis for a motion for reconsideration and thus, Plaintiff's motion will be denied as it relates to this argument.

9

### 3. Alleged Factual Discrepancies

Plaintiff argues that the court improperly concluded that "Mr. Horgan was never provided notice that he was chosen as the 'Technical Advisor,' and believed Mr. Hartner was serving as the Technical Advisor on the Project." (*Id.*, at 18). Plaintiff contends that the court's conclusion conflicts with Mr. Horgan's testimony that:

> I – my role was to provide technical support as and when required, specifically related to Nudura's ICF system. And so on occasion, I received email requests to, you know, provide some support. One was, I believe, on an RFI where PCS and Grimberg were submitting an RFI to change some of the reinforcement details to the government, to the Navy, and I commented, you know, on those emails and what their RFI request was.

(ECF No. 75-8, at 4). While Plaintiff argues that "[t]his obvious factual conflict in the evidence should be considered and resolved by the jury," (ECF No. 128-1, at 18), this "factual conflict" is not about whether he was designated the official "Technical Advisor," and does not affect the resolution of any of Plaintiff's claims.

First, the "improperly resolved factual discrepancy" cited by Plaintiff appears in the statement of facts, (ECF No. 116, at 5), and has no bearing on the court's conclusion that "Plaintiff

10

presents no evidence that Nudura failed to respond to requests for assistance." (*Id.*, at 17).

Second, Plaintiff has not pointed to a factual dispute that needed to be resolved. Mr. Hartner testified that Plaintiff "never . . . designated [him] as a technical advisor and never provided [him] any notice, never provided any credentials, never even asked [him] to attend any meetings." (ECF No. 75-8, at 3-4). In Mr. Horgan's declaration he explained that he believed it was "Grimberg's intent to have Ted Hartner, one of the owners of PCS, serve as the technical advisor for the ICF wall construction." (ECF No. 62-18, at 2). Mr. Horgan went on to explain that:

> During the construction of the ICF walls, [he] was never asked by Grimberg why [he] was not present at the Project site and/or why [he] was not serving as a technical advisor. During the Project, [he] was available to provide technical support when required, and in fact did so when asked, but [he] did not serve as the technical advisor (as that role is described in the specifications for the Project).

(*Id.*, at 3). It is undisputed that while Mr. Horgan provided technical support in some capacity, he "was never provided notice that he was chosen as the 'Technical Advisor,' and believed Mr. Hartner was serving as the Technical Advisor on the Project." (ECF No. 116, at 5). Thus, Plaintiff's assertion that the court

11

improperly resolved a factual dispute in favor of Nudura is incorrect and the requested reconsideration will be denied.

### 4. Application of Pleading Standard

Plaintiff argues that the court's "conclusion that Grimberg did not plead the January 2018 certifications as part of its breach of contract claim" is "simply incorrect." (ECF No. 128-1, at 19). As explained in the March 20, 2025, opinion, "the amended complaint does not assert specifically that the January 18, 2018 certifications were a formal part of its contract with Nudura," thus, Plaintiff "cannot argue this new theory at the summary judgment stage." (ECF No. 116, at 13-14).  Plaintiff now argues that the references to the January 2018 certifications in three paragraphs of the Amended Complaint, along with a statement incorporating by reference all the allegations in the entire Amended Complaint as part of the breach of contract claim, was clearly and sufficiently pleaded under Fed.R.Civ.P. 8.  (ECF No. 128-1, at 19).  As in the original opinion, this court disagrees. *See Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 421 (4th Cir. 2014) (finding that incorporating by reference background paragraphs of the complaint into a particular count did not put defendants on notice that they were included in the claim).

12

Plaintiff's disagreement with the court's reasoning is not a proper basis for reconsideration, thus the requested reconsideration will be denied. *See Sanders*, 2011 WL 4443441, at *1.

B.  **Tort-Related Claims (Counts V, VI, VII, and XI)**

Plaintiff argues that the court erred in concluding that "[b]ecause the duty to provide technical support on the Project stems from the Purchase Order, the tort claims are barred under both Maryland and Virginia law." (ECF No. 116, at 28). Plaintiff makes two arguments in support of its conclusion:

> (1) Nudura breached a duty of care imposed by law before the parties signed the Purchase Order and thus this duty could not have stemmed from the Purchase Order, and (2) Nudura's failure to provide technical support gives rise to claims in both tort and contract under Maryland and Virginia law.

(ECF No. 128, at 21). Neither argument meets the high bar of clear error causing manifest injustice.

1.  **Precontractual Duty**

During summary judgment briefing, Plaintiff argued that Nudura had a duty to Plaintiff under both Virginia and Maryland law stemming from (1) precontractual representations on December 1, 2016, by email, December 18, 2017, at the "scope review" meeting, and January 28, 2018, by letter, regarding both Mr.

13

Horgan's role as a "Technical Advisor" and PCS' qualifications; and (2) an independent duty stemming from its knowledge "that the failure to provide technical support would expose the future occupants of the new school building to the risk of *personal injury or death*." (ECF No. 75, at 25-26).

Plaintiff now argues the similar point that the source of Nudura's duty stems from Nudura's precontractual misrepresentation of "the propriety of its product for the Project, PCS's qualifications, and Nudura's intention to support the construction of the ICF walls throughout the Project's tenure." (ECF No. 128-1, at 21). As this court stated in the summary judgment motion, "the representations cited still concern Nudura's contractual obligation to provide periodic technical support." (ECF No. 116, at 28). Without the Purchase Order, there would be no relationship between these two sophisticated parties giving rise to such a duty. Plaintiff has not identified a "clear error" and thus, Plaintiff's motion will be denied as it relates to this argument.

### 2. Maryland and Virginia Claims in Contract and Tort

Finally, Plaintiff asks the court to reconsider whether Maryland and Virginia imposed a duty of care on Nudura before the parties signed the Purchase Order. (ECF No. 128-1, at 21). Plaintiff asserts that both Maryland and Virginia "recognize

14

claims in tort for breach of duties arising from contracts." (ECF No. 128-1, at 23). Plaintiff made this argument during summary judgment briefing, (ECF No. 75, at 23-26), and this court analyzed the case law on tort liability in business and contractual settings from both states in its original opinion, (ECF No. 116, at 25-28). Plaintiff's disagreement does not rise to the level of "clear error." Plaintiff's motion will be denied as it relates to this argument.

### C.  Indemnification (Count II)

Plaintiff argues that the court should revisit its conclusions relating to the indemnity claim because Nudura is "in law responsible" for PCS and thus liable under the indemnity provision of the Purchase Order. (*Id.*, at 26-27). At the outset, Plaintiff notes that its "original summary judgment motion did not present the [c]ourt with the question of Nudura's duty to indemnify Grimberg for PCS's errors (as opposed to Nudura's own contractual breaches)." (*Id.*, at 26 n.10). Plaintiff, however, contends that the court should consider its argument for "reasons of fairness and judicial efficiency." (ECF No. 136, at 16).

"In considering whether to revise interlocutory decisions, district courts in this Circuit have looked to whether movants presented new arguments or evidence, or whether the court has

obviously misapprehended a party's position or the facts or applicable law." *Nature-Tech, LLC v. Hartford Fire Ins. Co.*, No. 19-cv-2053-DKC, 2022 WL 2065875, at *2 (D.Md. June 8, 2022) (quoting *Brown v. Frazier*, No. 21-cv-1000-JKB, 2021 WL 2338827, at *1 (D.Md. June 8, 2021)).  The Fourth Circuit has made clear, however, that "a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider an interlocutory order." *See McLaurin v. E. Jordan Iron Works, Inc.*, 666 F.Supp.2d 590, 596 (E.D.N.C. 2009), *aff'd*, 410 F.App'x 630 (4th Cir. 2011) (citation modified).  Accordingly, the court will not consider Plaintiff's new argument and the court will not reconsider dismissal of Plaintiff's indemnity claim.

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion for reconsideration will be denied.  A separate order will follow.

                                                          /s/
                                  DEBORAH K. CHASANOW
                                  United States District Judge